IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


SHANTUBHAI SHAH,                                   )   Civil No.: 3:17-cv-00226-JE
                                                  )
                      Plaintiff,                  )
                                                  )   OPINION AND ORDER
           v.                                     )
                                                  )
MEIER ENTERPRISES, INC., a                        )
Washington Corporation; PAUL GIEVER,              )
CEO/President; STEVEN ANDERSON, an                )
Individual; and BOBBI KEEN, an Individual;        )
                                                  )
                                                  )
                      Defendants.                 )
_____           )


Shantubhai N. Shah
6637 SW 88th Place
Portland, OR 97223

          Plaintiff *pro se*

Krishna Balasubramani
Sather Byerly & Holloway, LLP
111 SW Fifth Avenue, Suite 1200
Portland, OR 97204

          Attorney for Defendants

JELDERKS, Magistrate Judge:

*Pro se* Plaintiff Shah brings this action against Defendants Meier Enterprises, Inc. ("Meier"); and individuals Paul Giever, Steven Anderson, and Bobbi Keen alleging age, race, and national origin discrimination under federal and Washington state laws, whistle blower retaliation under Oregon and Washington state laws; and common law retaliatory wrongful discharge.[1]

The parties have filed cross motions for summary judgment. Plaintiff has also filed two motions for sanctions, a motion to withdraw consent to Magistrate Judge Jurisdiction, a motion for reconsideration of this Court's Opinion and Order denying Plaintiff leave to file a Second Amended Complaint, and a motion for "Leave to file Plaintiff's Affidavit in Support of First Amended Motion for Summary Judgment."

Plaintiff's motions for sanctions, motion for reconsideration and motion to withdraw consent are denied. Plaintiff's motion for leave to file an affidavit is granted.

For the reasons set forth below, Defendants' motion for summary judgment is granted and Plaintiff's motion for summary judgment is denied.

## **Background**

Plaintiff was 77 years old at the time of filing and was 75 years old during the relevant period. He was born in India and identifies himself as an Asian American. (Am.Compl. ¶¶ 2, 14). During the relevant time period, Plaintiff was a "Registered Professional Engineer" in Oregon

---

[1] In his Amended Motion for Summary Judgment Plaintiff, for the first time, alleged a claim of common law fraud. Plaintiff subsequently withdrew this claim in his Response to Defendants' Cross Motion for Summary Judgment.

and Washington who was employed by Meier Enterprises as a Sr. Electrical Engineer/Project Manager. (Am.Compl. ¶¶ 16, 17).

Meier Enterprises is a privately-held Washington Corporation with its principal place of business in Kennewick, Washington. It is also a registered foreign corporation with Oregon's Secretary of State. (Am.Compl. ¶3; Meier Ent., Inc. Answer ¶3; Anderson Decl. ¶2). It is a full-service, architectural and engineering consulting firm. (Anderson Decl. ¶2). Defendant Steve Anderson was the President of Meier from 2006 through August 2016. (Anderson Decl. ¶3). Defendant Paul Giever succeeded Anderson and currently holds the position of President. (Giever Depo. p. 5). Defendant Bobbi Keen is the Controller/Human Resources Director. (Keen Decl. ¶1).

Five Group Managers and the Controller/Human Resources Director report directly to the President. (Keen Decl. ¶2). Meier's strategic committee, which consisted of Defendant Anderson, Defendant Giever, Defendant Keen, CAO/Director of Marketing Denise Sweeden, and Director of Projects Anthony Cockbain, is responsible for hiring professional engineers. (Keen Decl. ¶11). Meier uses several different avenues to find qualified candidates, including Volt Workforce Solutions, which was how Defendants were put in contact with Plaintiff. (Keen Decl. ¶¶4, 7).

Meier was seeking to fill both an Electrical Group Manager position and a Senior Electrical Engineer/Project Manager position. (Keen Decl. ¶5, 6).  After being contacted by Volt, Keen, Anderson and Mechanical Group Manager Colin Bates interviewed Plaintiff by phone on March 10, 2016. (Keen Decl. ¶8; Anderson Decl. ¶¶5, 6). Meier did not consider Plaintiff for the Group Manager position after the initial interview because he lacked Washington Labor and Industries ("L&I") familiarity and experience and because he and his work were unknown to

Defendants. (Keen Depo. pp. 32, 33, 34, 37, 39-40, 41-42; Anderson Depo. pp. 40-41, 42, 44-45, 78-79; Anderson Decl. ¶6). Instead, Meier asked Plaintiff to continue the interview process for the Senior Electrical Engineer/Project Manager position in the Vancouver, Washington office. This position would report to the Electrical Group Manager. (Shah Depo. p. 16, Depo. Ex. 2). Plaintiff flew to Kennewick, Washington on March 14, 2016, for an in-person interview with Anderson, Bates and electrical professional engineer consultant Pam Arneson. (Shah Depo. pp. 18, 20; Keen Decl. ¶10). On March 21, 2016, Plaintiff had an in-person interview in the Vancouver office with Anderson and several of the Vancouver employees. (Anderson Decl. ¶5). Plaintiff testified that no one made any comments about his age, race or national origin during the interview process. (Shah Depo. pp. 21-22). Meier offered Plaintiff the Senior Electrical Engineer/Project Manager position on March 22, 2016 and Plaintiff began work that same day. (Shah Depo. p. 22; Depo. Ex. 3). Plaintiff was informed that he was being hired on an at-will basis and that the first 60 days of employment constituted a probationary period. (Shah Depo. p. 23; Depo. Ex. 3).

Meier received Kelly Waterman's resume on April 6, 2016, for the Electrical Group Manager position. (Keen Decl. ¶16). Waterman is younger than Plaintiff and is Caucasian. (Def. Reply p. 2).Waterman had experience with Washington L&I and knew the local L&I reviewer. (Keen Depo. p. 37). Waterman and his work were also known to Meier's clients and he had demonstrated an ability to successfully manage difficult projects. (Keen Depo. pp. 33, 37; Anderson Decl. ¶23). Meier sent an offer letter to Waterman on April 26, 2016. (Keen Decl. ¶16).

In the meantime, Anderson was serving as the interim Electrical Group Manager and was managing the administrative functions of the Electrical Group. (Anderson Decl. ¶4). He assigned

Plaintiff as the professional electrical engineer for the Pasco High School project. (Anderson Decl. ¶7). Plaintiff was responsible for the original electrical design package sent to L&I for state required review. The submittal was twice rejected. (Anderson Decl. ¶7). Plaintiff was asked to address the reviewer comments. In an email dated Wednesday, April 27, 2006, Anderson asked Plaintiff to discuss concerns raised during the L&I review process and informed Plaintiff that Meier could not afford any further delay. (Shah Depo. Ex. 10). Plaintiff emailed Pam Arneson regarding the reviewer's comments and responded by email to Anderson that he would be out of town until Monday. (Shah Depo. Exs. 10, 15). Anderson raised additional issues with Plaintiff's work performance in an email later that day, telling Plaintiff he needed to pay closer attention to detail and that he had been removed from the Pasco High School job "because this was not happening." (Shah Depo. Ex. 12; Anderson Decl. ¶¶7-9). Plaintiff responded "I trusted Doug (Farris, the electrical designer) to do what he was doing on different plans. In rush job out of door we make errors that should not happen. I will give utmost attention and not trust designers." (Shah Depo. Ex. 13). Defendants found it necessary to hire an outside consultant to correct and carry on the work that Plaintiff had been assigned. (Anderson Decl. ¶8).

In an email dated May 2, 2016. In his email Plaintiff wrote:

I have major concerns about projects designed by Doug without my directions or supervision and it takes lot [sic] of time and effort to understand what he has done . . . . He hardly ever talks to me what he is doing. . . . There is not a direct link all hours of work between us. Doug is unorganized and makes lots of errors in assumptions and names of panel. I cannot trust his design work without my engineering directions.

I would be doing injustice both to Meier and its clients by stamping drawings of projects designed without my directions or supervision.

In addition it's a violation of engineering practice to stamp drawings not done under engineer's supervision or directions. My suggestions would be to design projects by Zack in Vancouver office with my directions so I have comfort as an Engineer of Record.

(Shah Depo. Ex. 18.).

In response, Anderson advised Plaintiff by email that he had been hired to direct and review the work of the engineers and designers. (Shah Depo. Ex. 19; Anderson Decl. ¶9). He informed Plaintiff that an outside consultant had been hired to review Plaintiff's work and that was "not good." Anderson indicated that he would talk to Farris about Plaintiff's comments but that Plaintiff needed to "concentrate on your project requirements and they need to improve." (Shah Depo. Ex. 19). Plaintiff advised Anderson that he would be taking the next two days off from work, time off he had failed to properly request under Meier company policy. (Shah Depo. pp. 70, 72; Depo. Ex. 21).

During Plaintiff's employment period, the strategic committee met on April 14, 2016 and April 26, 2016 and discussed, among other items, concerns about Plaintiff's work performance. (Anderson Decl. ¶12; Keen Decl. ¶ 11). The committee discussed concerns that had been expressed by other staff and whether Meier should continue Plaintiff's employment despite Plaintiff being involved in several projects. (Keen Decl. ¶13, Anderson Decl. ¶¶12-13).

On May 3, 2016, one of Meier's clients on a different project identified significant issues with the electrical portion of a draft report that was Plaintiff's responsibility. (Shah Depo. Ex. 22). One of Plaintiff's colleagues also raised issues with Plaintiff's thoroughness and level of contribution. (Shah Depo. Ex. 23; Newell Decl. ¶¶4, 6). These concerns were communicated to Plaintiff on May 3, 2006. (Shah Depo. Ex. 23). Based on Plaintiff's unsatisfactory work performance on the Pasco High School project, client complaints about his work product on a separate project, and the questionably timed and improperly requested time off, the strategic committee decided to terminate Plaintiff's employment. (Anderson Decl. ¶ 21). Plaintiff was not

given a formal warning to improve his work because he was in his probationary period. (Keen Depo. p. 74).

Under its agreement with Volt, Meier would incur an $18,500 recruiter fee if Plaintiff stayed with Meier more than 60 days. (Keen Decl. ¶¶6,15). The last day to terminate Plaintiff's employment without incurring the fee was May 9, 2016. (Keen Decl. ¶15). On May 9, 2016, after 60 days of employment and only 35 days of work, Anderson met with Plaintiff in the Vancouver office, told him it was not working out and asked for the Meier keys. (Shah Depo. pp.103-104; Anderson Decl. ¶22).

Later on May 9th, Plaintiff filed a complaint with the Board of Professional Engineers and Land Surveyors. (Shah Depo. pp. 106-107; Depo. Ex. 25). Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC) in July 2016. (Shah Depo. p. 115).

Waterman began working for Meier on May 31, 2016, as the Group Manager in Meier's Kennewick office. (Keen Decl. ¶16). In September 2016, Meier's Vancouver office was closed down and Plaintiff's position was never filled. (Keen Depo. pp. 25, 68; Depo Ex. 1; Anderson Depo. p. 86).


### Evaluating Motions for Summary Judgment

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548 (1986). The moving party may discharge this burden by showing that there is an absence of evidence to support the nonmoving party's case. *Id.* When the

moving party shows the absence of an issue of material fact, the nonmoving party must go beyond the pleadings and show that there is a genuine issue for trial. *Id.*

The substantive law governing a claim or defense determines whether a fact is material. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987). Reasonable doubts concerning the existence of a factual issue should be resolved against the moving party. *Id.* at 630–31. The evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505 (1986). No genuine issue for trial exists, however, where the record as a whole could not lead the trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348 (1986).

Where parties file cross-motions for summary judgment, the court "evaluate[s] each motion separately, giving the non-moving party in each instance the benefit of all reasonable inferences." *A.C.L.U. of Nev. v. City of Las Vegas,* 466 F.3d 784, 790–91 (9th Cir.2006) (quoting *A.C.L.U. of Nev. v. City of Las Vegas (A.C.L.U. I),* 333 F.3d 1092, 1096–97 (9th Cir.2003)).

## Discussion

### I. Statutory Whistleblower Claims

Plaintiff has asserted whistleblower claims under both Washington and Oregon state law. Where, as here, the laws of more than one jurisdiction arguably apply to an issue, a federal court exercising diversity jurisdiction must apply the choice of law rules of the state in which it is located. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941). To resolve choice of law questions, the Oregon Supreme Court has adopted the "most significant relationship" approach of the Restatement (Second) of Conflict of Laws in determining the appropriate

substantive law. *Casey v. Manson Constr. & Eng'g Co.,* 247 Or. 274, 287–88 (1967). However, Oregon state law requires that courts first make a threshold determination that there is an actual conflict between the law of the forum and that of another state. *Fields v. Legacy Health Sys.*, 413 F.3d 943, 951 (9th Cir. 2005)(citing *Portland Trailer & Equip., Inc. v. A–1 Freeman Moving & Storage, Inc.,* 182 Or.App. 347, 49 P.3d 803, 806 (Or.Ct.App.2002). If no material conflict exists between the laws or interests of the forum and the other state, we apply forum law. *Portland Trailer,* 49 P.3d at 806.

Plaintiff brings whistleblower claims under ORS 659A.199 and ORS 659A.030. Oregon's whistleblower statutes make it an unlawful practice for an employer – public or private – to retaliate against an employee who has in good faith reported information that "the employee believes is evidence of a violation of state or federal law, rule or regulation." ORS 659A.199. Oregon Revised Statute ORS 659A.030(f) makes it unlawful for "any person" to retaliate against "any other person" who has opposed any unlawful discriminatory practice under ORS 659A.030 or who has filed a complaint, testified or assisted in any proceeding under that chapter.

Plaintiff also asserts whistleblower retaliation under Revised Code of Washington (RCW) Sections 49.17.160 and 19.60.210. As correctly stated by Defendants, RCW 49.17.160 protects an employee who files a complaint under the Washington Industrial Safety and Health Act (WISHA). Section 49.60.210 prohibits retaliation against those who oppose any practices forbidden by Chapter 49.60. This Chapter sets forth Washington's anti-discrimination law. Washington statutes do not contain a provision similar to ORS 659A.199 that apply to private employees. *See* RCW 42.40, 42.41.

With the apparent conflict between Washington's and Oregon's statutory treatment of whistleblower retaliation it is necessary to proceed to apply Oregon's choice of law test. Under

the Restatement, a court should consider the following contacts to determine which state has "the most significant relationship" to the case: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered. *Restatement (Second) of Conflict of Laws* § 145.

Here, Washington has the most significant contacts. The employment relationship, the alleged unlawful conduct by Defendants; and the residency and place of business of the Defendants are all in Washington. Only Plaintiff's residency in Oregon weighs in favor of applying Oregon substantive law. Accordingly, Washington law applies to all of Plaintiff's state law claims and those claims asserted under Oregon state law are dismissed.

Having concluded that Washington law applies to Plaintiff's state law claims, we turn next to the specifics of his statutory whistleblower retaliation claim. This claim asserts that Plaintiff's reporting to Defendants of violations of engineering regulations and his filing of a formal complaint with the Washington Department of Labor were protected activities under RCW Sections 49.17.160 and 49.60.210. (Am.Compl. ¶¶ 42-50). Defendants argue that none of these provisions applies to the facts of this case. I agree.

As noted above RCW 49.17.160 protects an employee who files a complaint under the Washington Industrial Safety and Health Act (WISHA). Plaintiff did not file a claim under WISHA. In addition, the complaint Plaintiff did make to Washington's Board of Professional Engineers and Land Surveyors was filed after he was terminated. The other purported statutory basis for Plaintiff's claim, Section 49.60.210, prohibits retaliation against those who oppose any practices forbidden by Chapter 49.60. This Chapter sets forth Washington's anti-discrimination law. There is no evidence in the record that Plaintiff opposed any unlawful practice under

Chapter 49.60 while in Defendants' employ. Plaintiff did not file his EEOC complaint until after he was terminated. Plaintiff cannot establish a *prima facie* case of whistleblower retaliation under either of statutes upon which he relies. Accordingly, Plaintiff's statutory whistleblower claims fail as a matter of law.

## II. <u>Wrongful Discharge</u>

Count 1 of Plaintiff's Whistleblower Retaliation Claim alleges common law wrongful discharge against Defendant Meier. Plaintiff alleges that Defendant Meier wrongfully discharged Plaintiff in retaliation for notifying Meier of misconduct and reporting Meier's misconduct to a regulatory agency. Plaintiff also alleges that Meier discharged him for "refusing to commit an illegal act, ignoring and supporting the unlicensed and unsupervised practice of engineering." (Am.Compl. ¶¶ 34-41).

As an initial matter and as discussed above, Plaintiff's allegation that he was terminated in retaliation for reporting misconduct to a regulatory agency is unsupported by the record. The evidence supports only the conclusion that Plaintiff's reports to the Board of Professional Engineers and Land Surveyors and the EEOC were filed after he was terminated and thus cannot support a claim for retaliatory discharge.

In a very limited exception to at-will employment doctrine, Washington courts have allowed a wrongful discharge claim on public policy grounds. *Gardner v. Loomis Armored Inc.*, 128 Wash. 2d 931, 936, 913 P.2d 377, 379 (1996).  Public policy tort actions are allowed in four different situations: "(1) where employees are fired for refusing to commit an illegal act; (2) where employees are fired for performing a public duty or obligation, such as serving jury duty; (3) where employees are fired for exercising a legal right or privilege, such as filing workers' compensation claims; and (4) where employees are fired in retaliation for reporting employer

misconduct, *i.e.,* whistleblowing." *Gardner v. Loomis Armored Inc.*, 128 Wash. 2d at 936, 913 P.2d at 379 (1996)(citing *Dicomes v. State,* 113 Wash.2d 612, 618, 782 P.2d 1002 (1989)). Plaintiff's Amended Complaint asserts a claim based on the first and fourth of these situations.

In order to establish a claim under Washington law for wrongful discharge involving alleged violations of public policy, a Plaintiff must show "1) the existence of a clear public policy (the *clarity* element); 2) that discouraging the conduct in which [he] engaged would jeopardize the public policy (the *jeopardy* element); 3) that his public-policy-linked conduct was a substantial factor in (i.e. the cause of) the employer's decision to discharge him (the *causation* element); and 4) that employer is not able to offer an overriding justification for the dismissal (the *absence of justification* element). *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 971 (9th Cir. 2002)(citing *Ellis v. City of Seattle,* 142 Wash.2d 450, 13 P.3d 1065, 1070 (2000) (en banc)(citations and internal quotations omitted)).

Plaintiff alleges that Defendant Meier violated RCW Section 18.43, which, he asserts, helps protect public health and safety through the regulation of engineers. Plaintiff contends that he notified Defendants of regulatory violations in an email dated May 2, 2016. In his email Plaintiff writes:

> I have major concerns about projects designed by Doug without my directions or supervision and it takes lot [sic] of time and effort to understand what he has done . . . . He hardly ever talks to me what he is doing. . . . There is not a direct link all hours of work between us. Doug is unorganized and makes lots of errors in assumptions and names of panel. I cannot trust his design work without my engineering directions.

> I would be doing injustice both to Meier and its clients by stamping drawings of projects designed without my directions or supervision.

> In addition it's a violation of engineering practice to stamp drawings not done under engineer's supervision or directions. My suggestions would be to design projects by Zack in Vancouver office with my directions so I have comfort as an Engineer of Record.

(Shah Depo. Ex. 18.).

In his motion for summary judgment, Plaintiff asserts that this email alerted Defendant Meier that it was violating WAC 196-27A-020(1)(c). (Pl. Am. MSJ, p. 5). This regulation sets forth that "[r]egistrants must inform their clients or employers of the harm that may come to the life, health, property and welfare of the public at such time as their professional judgment is overruled or disregarded. If the harm rises to the level of an imminent threat, the registrant is also obligated to inform the appropriate regulatory agency." This regulation reflects a public policy of safeguarding the public from harm that may arise from disregard of the judgment of those operating in the capacity of registered professional engineers. Thus the "clarity element" is met. *See Danny v. Laidlaw Transit Servs., Inc.,* 165 Wash. 2d 200, 219, 193 P.3d 128, 137 (2008) (The "clarity" element does not require us to evaluate the employer's conduct at all; the element simply identifies the public policy at stake.).

Turning to the "jeopardy element," I conclude that the evidence fails to show that Plaintiff engaged in particular conduct that directly related to or was necessary for the effective enforcement of the public policy at issue. *See Rose v. Anderson Hay & Grain Co.*, 184 Wash. 2d 268, 277, 358 P.3d 1139, 1143 (2015). Plaintiff testified that the email discussed concerns that Doug Farris was working remotely and it was difficult to supervise his work. (Shah Depo. p. 79). Plaintiff testified that, at the time, his email was a "suggestion" to Steve Anderson and that he "was not thinking of legal action." (Shah Depo. pp. 80-81).

The evidence supports only the conclusion that Plaintiff communicated with his supervisor that he was dissatisfied with the working relationship he had with Doug Farris and the necessity to supervise Farris' work remotely. The vague language of Plaintiff's May 2nd email is insufficient to constitute notice to his employer under WAC 196-27A-020 and Plaintiff has

provided no other evidence that he either engaged in whistleblowing conduct or refused to commit an illegal act. In the absence of such evidence, Plaintiff cannot establish the jeopardy element necessary to support his claim. Therefore, Defendant's motion for summary judgment on the wrongful discharge claim is granted.

## III. Age Discrimination Claim Under Washington Law

Under RCW Section 49.60.180(1) and Washington Administrative Code (WAC) 162-04-010, the protected class of workers is those from 40 to 70 years of age. It is undisputed that Plaintiff was 75 years old at the time of the alleged discriminatory conduct. Accordingly, Plaintiff's age discrimination claim under Washington state law fails.

## IV. Remaining Discrimination Claims

As noted above, Plaintiff has also asserted claims of race and national origin discrimination under federal and Washington state law and a claim for age discrimination under federal law.

### A. Standards

The Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623 et *seq.,* makes it unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's age. Protection under the ADEA extends to all individuals who are at least 40 years old. 29 U.S.C. § 631(a).

Title VII prohibits employers from making adverse employment decisions based upon an individual's race or national origin. *See* 42 U.S.C. § 2000e–2(a). The court applies the same analytical framework to both Title VII and ADEA claims. *Wallis v. J.R. Simplot Co.,* 26 F .3d 885, 888 (9th Cir.1994).

Washington courts look to Title VII case law for instruction or persuasive authority in construing WLAD. *See Glasgow v. Georgia–Pacific Corp.,* 103 Wash.2d 401, 693 P.2d 708, 711, n. 2 (1985). Accordingly, the court's analysis of federal law applies to Plaintiff's claim for race and national origin discrimination under the Washington Law Against Discrimination (WLAD) as well. *See Hardage v. CBS Broadcasting Inc.,* 427 F.3d 1177, 1183 (9th Cir.2005); *Alonso v. Qwest Commc'ns. Co., LLC,* 178 Wash.App. 734, 315 P.3d 610, 616, n. 11 (Wash.Ct.App.2013) ("Because our discrimination laws substantially parallel Title VII of the Civil Rights Act of 1964, we may look to federal law for guidance.").

For claims alleging violation of the ADEA or Title VII, federal courts apply a "burden shifting" method first set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). The plaintiff carries the initial burden of establishing a *prima facie* case of discrimination. *Id.* at 802. That burden may be met by offering either direct evidence of discriminatory intent or through the framework set out in *McDonnell Douglas. Wallis,* 26 F.3d at 889. Under the *McDonnell Douglas* framework, a plaintiff can establish a *prima facie* case of unlawful discrimination by showing that he belonged to a protected class, was qualified for the position in question, was subjected to an adverse employment action, and others, who were similarly situated but not in the protected class, were treated more favorably. *E.g., Aragon v. Republic Silver State Disposal Inc.,* 292 F.3d 654, 658 (9th Cir. 2002), *as amended* (July 18, 2002)(citations omitted); *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142 (2000). Establishing a *prima facie* case creates a presumption of unlawful discrimination. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254 (1981).

Under the *McDonnell Douglas* framework, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Once the

defendant meets this burden of production, the presumption of unlawful discrimination "simply drops out of the picture" *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511 (1993), and the plaintiff then bears the burden of demonstrating that the employer's proffered reason is pretextual. *Burdine,* 450 U.S. at 256. This may be accomplished either by persuading the trier of fact that a discriminatory reason more "likely motivated the employer or ... by showing that the employer's proffered explanation is unworthy of credence." *Id.*

A plaintiff may show that the employer's proffered reason is not credible because it is internally inconsistent or is otherwise not believable. *Chuang v. University of California, Davis Board of Trustees,* 225 F.3d 1115, 1127 (9th Cir.2000). However, a plaintiff "must do more than establish a *prima facie* case and deny the credibility of the [defendant's] witnesses." *Wallis,* 26 F.3d at 890 (citation omitted). If the plaintiff presents evidence that is sufficient to persuade the trier of fact that the defendant's proffered reason is false, intentional discrimination may be inferred based upon disbelief of the employer's reason and the existence of a *prima facie* case of discrimination. *Nidds v. Schindler Elevator Corp.,* 113 F.3d 912, 918 n. 2 (9th Cir.1996)(cert. denied 522 U.S. 950 (1997)).

**B. Analysis**

Plaintiff alleges that age was a substantial factor in Defendants' decision to terminate his employment and that, after he was terminated, Defendants hired a younger, less experienced replacement. Plaintiff also alleges that he was treated differently and ultimately terminated because of his race and national origin. Defendants contend that Plaintiff fails to establish a *prima facie* case of discrimination for either his age or race and national origin claims. Defendants argue that, even if Plaintiff establishes a *prima facie* case, Defendants have offered

legitimate, non-discriminatory reasons for terminating Plaintiff's employment and Plaintiff has not produced any evidence that the proffered reasons are pretextual.

After a thorough review of the record, I conclude that Plaintiff has failed to establish a *prima facie* case of discrimination based on age, race or national origin. It is undisputed that Plaintiff was a member of classes protected by WLAD (for race and national origin claims only), Title VII and the ADEA and that he suffered an adverse employment action. However, Plaintiff has not provided any direct evidence of discriminatory intent or any evidence to support the second and third prongs of the *McDonnell Douglas* test.

First, Plaintiff has offered no evidence of discriminatory intent. Plaintiff testified in his deposition that throughout his entire employment with Meier no one ever said anything about his race, national origin or age and nothing was ever said that could even be interpreted to be about his age, race or national origin. (Shah Depo. p. 115). Plaintiff also testified that no one made any comments about his age, race or national origin during the interview process. (Shah Depo. pp. 21-22). Plaintiff's employment was terminated after less than two months. Anderson and the other members of the strategic committee were involved in both Plaintiff's hiring and termination. Such circumstances undermine any inference of discriminatory animus. *See Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270–71 (9th Cir. 1996) (employer's initial willingness to hire the plaintiff is strong evidence the employer is not biased against that protected class).

Second, Plaintiff has produced no evidence to rebut Defendants' evidence that he was not qualified for the Group Manager position, the position that was eventually given to Kelly Waterman. Defendants offered deposition testimony and declarations that Meier did not consider Plaintiff for the Group Manager position after the initial interview because he lacked Washington

L&I familiarity and experience and because he and his work were unknown to Defendants. (Keen Depo. pp. 32, 33, 37, 39-40, 41-42;  Anderson Depo. pp. 40-41, 42, 44-45, 78-79; Anderson Decl. ¶6).   Instead, Meier considered and hired Plaintiff as a Senior Electrical Engineer/Project Manager.

Furthermore, Plaintiff has failed to point to evidence that shows that his work performance was satisfactory during the less than 60 days he was in Defendants' employ.  On Wednesday, April 27, 2006, Anderson asked Plaintiff to discuss concerns raised during the L&I review process and informed Plaintiff that Meier could not afford any further delay.  Plaintiff responded by email that he would be out of town until Monday.  Anderson raised additional issues with Plaintiff's work performance in an email later that day, telling Plaintiff he needed to pay closer attention to detail and that he had been removed from the Pasco High School job "because this was not happening." Defendants found it necessary to hire an outside consultant to correct and carry on the work that Plaintiff had been assigned. (Shah Depo. Ex. 12; Anderson Decl. ¶¶ 7-9). In an email dated May 2, 2006, Anderson advised Plaintiff that he needed to "concentrate on your project requirements and they need to improve." (Shah Depo. Ex. 19). Plaintiff advised Anderson that he would be taking the next two days off from work. The next day, one of Meier's clients on a different project identified significant issues with the electrical portion of a draft report that was Plaintiff's responsibility. (Shah Depo. Ex. 22). One of Plaintiff's colleagues also raised issues with Plaintiff's thoroughness and level of contribution. (Shah Depo. Ex. 23; Newell Decl. ¶¶4, 6). These concerns were communicated to Plaintiff on May 3, 2006. (Shah Depo. Ex. 23).

The evidence documents multiple complaints from several sources regarding Plaintiff's work performance, Plaintiff's failure to properly request time off and apparent disinclination to

accept responsibility for tasks within his job description. Plaintiff has not come forward with any significantly probative evidence to show there is a genuine issue regarding this prong of the *McDonell Douglas* test.

Finally, Plaintiff has not produced any evidence that similarly situated individuals outside the protected classes were treated more favorably in either the decision not to hire Plaintiff for the Group Manager position or to terminate his employment. Plaintiff asserts that he was differently treated because Meier hired Kelly Waterman, who was younger than Plaintiff and Caucasian, for the Group Manager position. As discussed above, Defendants offered deposition testimony and declarations that Meier did not consider Plaintiff for the Group Manager position after the initial interview because he lacked Washington L&I familiarity and experience and because he and his work were unknown to Defendants. In contrast, Kelly Waterman had experience with Washington L&I and knew the local L&I reviewer. (Keen Depo. p. 37). Waterman and his work were also known to Meier's clients and demonstrated an ability to successfully manage difficult projects. (Keen Depo. pp. 33, 37; Anderson Decl. ¶23).

Plaintiff also cannot establish that after his termination his position was filled with someone outside the protected classes. Plaintiff asserts that he was replaced by Kelly Waterman. However, the timeline of events disproves this argument. Plaintiff's initial interview was on March 10, 2016, after which Defendants, for the reasons discussed above, no longer considered Plaintiff qualified for the Group Manager position. Plaintiff was hired and started work on March 22, 2016 in Meier's Vancouver office. Meier received Waterman's resume on April 6, 2016 and sent an offer letter to him on April 26, 2016. Plaintiff was terminated on May 9, 2016. Waterman began working for Meier on May 31, 2016 as the Group Manager in Meier's Kennewick office. In September 2016, the Vancouver office was closed down and Plaintiff's

position was never filled. Even viewing all the evidence in a light most favorable to Plaintiff, the evidence does not support the conclusion that similarly situated individuals outside the protected classes were treated more favorably than Plaintiff.

Because Plaintiff has not produced evidence from which a trier of fact could conclude that he has satisfied second or fourth prongs of the *McDonell Douglas* test, he has not established a *prima facie* case of age, race or national origin discrimination.

Even assuming Plaintiff could establish a *prima facie* case, Defendants proffered legitimate, non-discriminatory reasons for not offering Plaintiff the Group Manager position and for Plaintiff's termination – i.e. Plaintiff's lack of qualifications for the Group Manager position as opposed to the Senior Electrical Engineer/Project manager position, and Plaintiff's unsatisfactory work performance. Plaintiff has not introduced any evidence suggesting that these reasons were pretextual. As noted above, where, "the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory action." *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1096 (9th Cir. 2005) (citation and internal quotations omitted); *see also Bradley*, 104 F.3d at 270–71. An "extraordinarily strong showing of discrimination [is] necessary to defeat the same-actor inference." *Coghlan*, 413 F.3d at 1097 (citation omitted). Plaintiff has not made any such showing here. Accordingly, Defendants' motion for summary judgment on Plaintiff's federal age discrimination claim and federal and state race and national origin claims is granted.[2]

---

[2] Plaintiff also asserts that individual Defendants Anderson, Keen and Giver violated RCW 49.60.220 by aiding, abetting or otherwise inciting Meier to unlawfully discharge Plaintiff. In the absence of support for Plaintiff's discrimination claims, Plaintiff's aiding and abetting claim fails as a matter of law.

## <u>Conclusion</u>

Plaintiff's motions for sanctions (#138, #154); motion for reconsideration (#140); and motion to withdraw consent to Magistrate Judge jurisdiction (#139) are DENIED.  Plaintiff's motion for leave to file an affidavit (#123) is GRANTED. For the reasons set out above, Defendants' motion for summary judgment (#129) is GRANTED and Plaintiff's motion for summary judgment (#72, #78) is DENIED.

DATED this 13th day of September, 2018.

_____/s/ John Jelderks_____
John Jelderks
U.S. Magistrate Judge
